IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLLEEN A. CARDINAL,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | CIVIL ACTION<br>NO. 14-1368 |

OPINION

**Slomsky, J.**                                                                                              **March 29, 2016**

## I.    INTRODUCTION

Before the Court are the Objections of Plaintiff Colleen A. Cardinal to the Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells. (Doc. No. 16.) Plaintiff filed a Complaint against Defendant Carolyn W. Colvin, Commissioner of the Social Security Administration, seeking review of the final decision of Defendant on Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 (the "Act"). (Doc. No. 3.) The Court referred this matter to Magistrate Judge Wells for a Report and Recommendation ("R&R"). (Doc. No. 14.) On August 27, 2015, Magistrate Judge Wells filed an R&R, recommending that Plaintiff's request for review be denied. (Doc. No. 15.) On September 9, 2015, Plaintiff filed Objections to the R&R. (Doc. No. 16.) On September 16, 2015, Defendant filed a Response to Plaintiff's Objections. (Doc. No. 18.) On September 21, 2015, Plaintiff filed a Reply to the Response. (Doc. No. 19.)

Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of the portions of the R&R to which objections have been made. After independently reviewing the Administrative Record (the "Record") and for the reasons that follow, the Court finds that

1

Plaintiff's Objections lack merit and will adopt and approve in its entirety the Report and Recommendation.

## II. BACKGROUND

### A. Factual and Procedural History

Plaintiff Colleen A. Cardinal was born on November 22, 1960 and was forty-nine years old on the date her alleged disability began. (Administrative Record ("R.") at 53, 55.) Plaintiff has a high school diploma and is able to read, write, and do simple math. (R. at 54-55.) Plaintiff attended hair dressing school and has worked as a waitress at various restaurants. (R. at 55, 57-58.) Plaintiff lived alone in an apartment at the time of the administrative hearing. (R. at 63.)

On December 2, 2011, Plaintiff applied for DIB, alleging a disability beginning on June 1, 2010. It was based upon severe depression, post-traumatic stress disorder, hepatitis, past substance abuse, and pain and numbness in her back, neck, and left arm. (R. at 82, 158, 163, 166.) Her claim was denied, and Plaintiff requested a hearing. (R. at 29.) An administrative hearing was held on April 1, 2013 in Philadelphia, Pennsylvania before Administrative Law Judge Jennifer M. Long (the "ALJ"). (R. at 29, 39.) At the hearing, Plaintiff and an impartial vocational expert ("VE") testified. (R. at 29.) Plaintiff was represented by counsel.

Plaintiff testified at the hearing that she had spent approximately eighteen years living off of disability benefits. (R. at 59.) Because she was unable to work due to her depression and anxiety, Plaintiff began receiving DIB in 1992. (R. at 29, 59-60.) They were terminated in 2005 after a determination that her disability had ceased. (Id.) Plaintiff then found employment as a waitress. (R. at 60.) She was fired for poor attendance. (Id.) Plaintiff testified that she has been fired from every job she has held because she was unable to perform her duties as expected by her employers. (R. at 61.) Plaintiff explained that she frequently is unable to leave her house to go to work because of her fear that co-workers do not like her. (R. at 60-61.) Plaintiff also

testified that she has chronic back pain resulting from a slip and fall in her shower in October 2011. (R. at 67-68.) She received two medical procedures in which fluid was removed from her back, but she does not take pain medication and does not receive physical therapy. (R. at 68.)

The VE testified that Plaintiff's past work as a waitress was classified as "semi-skilled, light work." (R. at 73.) The VE explained that given the Plaintiff's profile, any work that she could do should involve a low-stress environment with only occasional decision-making, occasional changes in the work setting, no production rate, and only occasional interaction with the public, co-workers, and supervisors. (R. at 74.) Assuming Plaintiff could perform medium work, the VE testified that she could perform as a deliverer of merchandise, a kitchen helper, or a laundry laborer. (R. at 74-75.) Assuming Plaintiff could perform light work, the VE stated that she could perform as a shirt presser, retail marker, or a cafeteria attendant. (R. at 76.) Assuming that Plaintiff could perform sedentary work, the VE explained that she could perform as a parking lot cashier, a call out operator, or an order clerk. (R. at 77.) Finally, the VE testified that if Plaintiff could only perform light unskilled work in isolation, or if Plaintiff could only perform work while having a severe limitation on her movement and mobility, there would be no available work for her. (R. at 77-79.)

In addition to the testimony given by Plaintiff and the VE, the ALJ considered the opinions of Syed Rizvi, M.D., Plaintiff's treating psychiatrist, and Dr. Brett E. Schur, Ph.D., Plaintiff's treating psychologist, as well as Plaintiff's Global Assessment of Functioning ("GAF") scores and other medical evidence. On April 26, 2013, the ALJ issued a decision unfavorable to Plaintiff, finding that she was not disabled and could perform available work. (R. at 29-39.) The ALJ made the following findings:

1. [Plaintiff] last met the insured status requirements of the Social Security Act on June 30, 2012.

2. For the purpose of this decision, [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of June 1, 2010, through her date last insured of June 30, 2012 (20 C.F.R. 404.1571 et seq.).

3. Through the date last insured, [Plaintiff] had the following severe impairments: depression, a posttraumatic stress disorder, anxiety, and a history of substance abuse, in reported remission (20 C.F.R. 404.1520(c)).

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Plaintiff] had the residual functional capacity to perform the exertional demands of light level work, lifting twenty pounds occasionally and lifting or carrying ten pounds frequently. Additionally, she could stand/walk for up to six hours and sit for up to six hours in an eight-hour workday (20 C.F.R. 404.1567). She could have only occasional exposure to hazardous machinery and unprotected heights. She was limited to simple work as defined in the DOT as SVP levels 1 and 2, routine and repetitive tasks, in a low stress job defined as having only occasional decision making and occasional changes in the work setting, no production rate or pace work, and only occasional contact with the general public, coworkers, and supervisors.

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work (20 C.F.R. 404.1565).

7. [Plaintiff] was born on November 22, 1960, and was 51 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 C.F.R. 404.1563).

8. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569, 404.1569 and 404 1569(a)).

> 11. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from June 1, 2010, the amended alleged onset date, through June 30, 2012, the date last insured (20 C.F.R.404.1520(g)).

(R. 32, 35-39.)

On March 19, 2014, the Appeals Counsel denied Plaintiff's request for review. (R. at 1-4.) On March 20, 2014, Plaintiff filed the Complaint in this Court, seeking judicial review of the adverse decision of the ALJ. (Doc. No. 3.) The Court referred this matter to Magistrate Judge Wells for an R&R. (Doc. No. 14.) On August 27, 2015, Magistrate Judge Wells recommended that Plaintiff's request for review be denied. (Doc. No. 15.)

On September 9, 2015, Plaintiff filed timely Objections to the R&R. (Doc. No. 16.) Specifically, Plaintiff objects to Magistrate Judge Wells' findings that the ALJ adequately considered the opinions of Plaintiff's treating psychiatrist and psychologist and evidence in the record, and that Plaintiff was not denied due process when she allegedly did not receive a full and fair administrative hearing. The Objections are now ripe for a review and a decision.

### B. Relevant Social Security Administration Regulations

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The claimant has the burden of proving the existence of a disability and can satisfy this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979.) If he does so, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, he is able to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. 416.920(f).

When evaluating a disability, the Social Security Administration uses a five-step process, which is followed in a set order:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

Id. § 404.1520(a)(4)(i)–(v).

**III.    STANDARD OF REVIEW**

When reviewing a final decision of the Commissioner of Social Security, the Court must determine whether the record demonstrates substantial evidence to support the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla . . . [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 F. App'x 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)). The Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).

Because the Commissioner adopts an ALJ's decision as his findings of fact, the ALJ must set out a specific factual basis for each finding.  Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); see 42 U.S.C. § 405(b)(1).  An ALJ must consider, evaluate, and refer to specific medical evidence in the record in his decision.  See Reefer v. Barnhart, 326 F.3d 376, 381–82 (3d. Cir. 2003).  Based on this evidence, an ALJ determines whether a claimant proved a "disability," and the Commissioner adopts this decision as his finding of fact.  Even if the record offers evidence that undermines the ALJ's conclusion, the Court will not overrule the decision of the ALJ unless that evidence is substantial.  Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate," not "a mere scintilla."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000) (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d. Cir. 1999)).

IV. **DISCUSSION**

    **A. The Magistrate Judge Properly Concluded that the ALJ Did Not Err by Giving Plaintiff's Doctors' Opinions Little Weight**

Plaintiff's first Objection is to the Magistrate Judge's finding "that the ALJ adequately supported her decision to reject the opinions of Ms. Cardinal's treating psychiatrist, Dr. Rizvi, and treating psychologist, Dr. Schur." (Doc. No. 16 at 1.)  Under the aforementioned five-step sequential evaluation process used to determine if a claimant has a qualifying disability, the ALJ determined that Plaintiff did not meet the Listing of Impairments criteria for Listing 12.04 (depressive syndrome) or Listing 12.06 (anxiety disorders), and thus Plaintiff was not disabled within the meaning of the Act.  (R. at 32-35.)  The ALJ concluded that the medical evidence provided was not sufficient to support a finding of disability, and that the exaggerated medical opinions relied upon by Plaintiff—those of Drs. Rizvi and Schur—were not supported by

medical evidence. (Id.) In the R&R, the Magistrate Judge concurred with this finding. (Doc. No. 15 at 1.)

The ALJ gave little weight to Dr. Rizvi's assessment of Plaintiff's condition because it was inconsistent with his own treatment notes. (R. at 34.) Dr. Rizvi completed a Mental Medical Source Statement, in which he concluded that, based on his own assessment of the Plaintiff, she was "unable to meet competitive standards" in all but two "mental abilities and aptitudes needed to do unskilled work." (R. at 350-51.) Such "abilities and aptitudes" which Plaintiff was unable to meet, according to Dr. Rizvi, include maintaining attention, understanding and remembering detailed instructions, and carrying out very short and simple instructions. (Id.) Dr. Rizvi also completed a Psychiatric Review Technique form in which he evaluated Plaintiff's condition as meeting the criteria for Listings 12.04 and 12.06 on the Listings of Impairments. (R. at 354-66.) Dr. Rizvi's treatment notes, however, consistently describe Plaintiff as neat, alert, oriented to person, place and time, fluent in speech, absent of hallucinations, delusions, or suicidal ideations, and having no memory impairment. (R. at 332-345.) The ALJ determined that the treatment notes were inconsistent with the exaggerated finding of limitations in Dr. Rizvi's medical assessments, and the Court agrees with Magistrate Judge Wells that the ALJ was correct in this finding. As such, the ALJ did not err in giving Dr. Rizvi's opinion little weight in light of other medical evidence.[1]

---

[1] Plaintiff repeats her arguments in her Objections that the ALJ incorrectly considered Dr. Rizvi's October 3, 3012 notes that her mood was "euthymic" as evidence against finding she met the Listing criteria, because that note was made after Plaintiff's June 30, 2012 date of last insured. (Doc. No. 16 at 1-2.) "Euthymic" is defined as "pertaining to a normal mood in which the range of emotions is neither depressed nor highly elevated." (Doc. No. 15 at 12 n.10 (quoting Mosby's Medical Dictionary, (8th Ed. (2009))). Magistrate Judge Wells found this to be a harmless error, because the remainder of the treatment notes indicate that Dr. Rizvi's finding of such "exaggerated limitations" was unwarranted. (Doc. 15. at 12 n.10.) The Court agrees.

The ALJ similarly gave little weight to Dr. Schur's February 20, 2013 report and Mental Medical Source Statement, in which he described Plaintiff as having "no useful ability to function" in many work related areas. (R. at 298-307.) The ALJ explained that the report attached to Dr. Schur's medical statement was nothing more than an "adopt[ion of] the claimant's complaints without professional balance of objectivity." (R. at 34.) The ALJ also found this report to be inconsistent with Dr. Schur's finding that "the claimant can perform all of her activities of daily living." (R. at 34 (referring to R. at 300-01).) The Court agrees with these findings. Dr. Schur's report is essentially a recantation of what Plaintiff had told him with very little independent analysis. The ALJ did not err in giving little weight to his opinion.

Plaintiff's main Objection to Magistrate Judge Wells' finding that the ALJ could give little weight to the opinions of Drs. Rizvi and Schur is that Magistrate Judge Wells determined that the ALJ was not required to consider any medical evidence or treatment notes that post-dated Plaintiff's June 30, 2012 date of last insured. (Doc. No. 16 at 2-5.) However, Magistrate Judge Wells was correct: the ALJ need only consider medical records prior to the date of last insured. See, e.g., Ortega v. Comm'r of Soc. Servs., 232 F. App'x 194, 197 (3d Cir. 2007 ) (holding that the ALJ need not consider medical evidence "after [the] last insured date"); Hyler v. Colvin, Civ. A. No. 12-4974, 2013 WL 3766817, at *9 (E.D. Pa. July 18, 2013) ("The relevant time period that the ALJ in this case must consider is whether plaintiff was disabled for DIB purposes at any time between plaintiff's alleged onset date . . . and the date plaintiff was last insured"); Jennings v. Astrue, Civ. A. No. 09-1642, 2009 WL 7387721, at *15 (E.D. Pa. Nov. 30, 2009) (the ALJ is "not required to evaluate" evidence after the date last insured); see also Fricker v. Halter, 45 F. App'x 85, 87 n.1 (3d Cir. 2001) (evidence post-dating the date last insured is "not directly relevant"); Spires v. Colvin, Civ. A. No. 15-920, 2015 WL 7422014, at *9 (E.D. Pa. Nov.

5, 2015) ("evidence that does not relate to the period between the alleged disability date and the date last insured is not probative"). Although Plaintiff cites two cases from other district courts that suggest the ALJ may consider medical evidence after the date of last insured (Doc. No. 15 at 6), the Court will follow the binding authority of the Third Circuit and the authority of this Court that the ALJ is not required to consider such evidence. As such, the ALJ did not err.[2]

### B. The Magistrate Judge Properly Concluded that the ALJ's Decision to Give Little Weight to Plaintiff's GAF Scores Was Supported by Substantial Evidence

Plaintiff's second Objection is to Magistrate Judge Wells' finding that the ALJ did not err in giving little weight to Plaintiff's GAF scores when evaluating if she had a disability within the meaning of the Act, given the other substantial evidence that existed in the Record. (Doc. No. 16 at 7.) Dr. Rizvi gave Plaintiff a GAF score of 50, while Dr. Schur gave Plaintiff a GAF score of 45. (R. at 33.) Because a GAF score of 41 through 50 indicates impairment in social or occupational functioning, Plaintiff believes that these scores were not given enough weight by the ALJ in determining if she has a disability. (Doc. No. 16 at 7.) The Court disagrees.

The ALJ found that:

> [I]t is noted that GAF assessments are highly subjective appraisals, which rely primarily on an individual's own description of her functioning level, and are just one factor to be considered in the evaluation of a claimant's functioning. These scores consider "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness" including factors such as

---

[2] Plaintiff also objects to Magistrate Judge Wells' finding that the ALJ must make the ultimate disability residual functional capacity determinations. (Doc. No. 16 at 6-7.) The ALJ's obligation to do so is obvious. Plaintiff suggests that Magistrate Judge Wells condoned the ALJ supplanting her own opinion for that of medical experts, in the absence of any medical evidence. However, that did not occur in this case—the ALJ properly considered the medical evidence, and determined that other evidence outweighed the opinions of Drs. Rizvi and Schur. While the "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight," they are only entitled to controlling weight when they are "not inconsistent with the other substantial evidence in [the claimant's] case record." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (quotations omitted). The ALJ found that the treating sources' opinions were inconsistent with other evidence in the record.

10

> education, housing, legal problems etc. These scores do not have a direct correlation to the severity requirements in Social Security's mental disorders listings. Accordingly, the undersigned does not place significant weight on the numerical scores especially when they are not supported by the evidentiary record, and fail to consider medical improvement following appropriate treatment.

(R. at 33.) Thus, the ALJ evaluated the GAF scores, but believed that other medical evidence existed that warranted her placing less weight on the scores. Plaintiff objects to this finding because the ALJ did not consider treatment notes beyond the date last insured that indicate continued low GAF scores. Again, Plaintiff challenges the authority of the ALJ to limit her consideration to the relevant time period—which ends at the date last insured. As Magistrate Judge Wells correctly noted:

> Even assuming that the consistent assignment of low GAF scores indicates continuing or worsening depression following Plaintiff's date last insured, '[a] medical condition which begins during a claimant's insured period, but does not become disabling until after its expiration, may not be the basis for qualification for disability benefits under the Act.'

(Doc. No. 15 at 16 n.11 (quoting Capoferri v. Harris, 501 F. Supp. 32, 36 (E.D. Pa. 1980)); see also Lauer v. Barnhart, No. Civ. A. 02-8585, 2004 WL 187407 (E.D. Pa. Jan. 28, 2004) (Plaintiff denied benefits when evidence of impairment began before the date last insured, but did not rise to the level of disability until after the date last insured). The Court agrees with Magistrate Judge Wells' finding that the ALJ properly used her discretion to give more weight to other medical evidence than to Plaintiff's GAF scores.

### C. The Magistrate Judge Properly Concluded that Plaintiff was Afforded a Full and Fair Hearing

Plaintiff's next Objection to the R&R is that Magistrate Judge Wells incorrectly found that Plaintiff was afforded a full and fair hearing. (Doc. No. 16 at 9.) Plaintiff raises two points in support of her claim that she was deprived of a full and fair hearing: 1) the Social Security Administration refused to accept her application for supplemental security income ("SSI")

benefits; and 2) the ALJ at the administrative hearing, as well as Plaintiff's counsel, erroneously stated that Plaintiff's date last insured was June 30, 2010 instead of June 30, 2012. (Id. at 8-9.) The Court finds both points unavailing.

Plaintiff asserts that her "condition after the date last insured would not be in dispute if [Plaintiff] had been successful in applying for SSI which would allow for an award of benefits after the date last insured." (Id. at 8.) Plaintiff's theory is that if she had successfully applied for SSI before her hearing, the ALJ would have been able to consider physical medical evaluations that occurred after her date last insured, which might have resulted in an outcome favorable to her. (Id. at 9). However, Plaintiff clearly did not apply for SSI when she applied for DIB, for that application expressly states "I DO NOT WANT TO FILE FOR SSI." (R. at 137.) Moreover, Magistrate Judge Wells found that although it is unclear if Plaintiff actually applied for SSI after the hearing, it is clear that she did not successfully apply. (Doc. No. 15 at 17.) Plaintiff does not to object to this finding. Thus, this Court finds this Objection to be meritless and will reject it.

Plaintiff also objects to Magistrate Judge Wells' finding that the misstatement of the date last insured at the hearing did not deny her a full and fair hearing. (Id. at 9.) Plaintiff speculates that this misstatement "colored [the ALJ's] assessment of the evidence." (Id.) The Court does not agree. As Magistrate Judge Wells notes, the ALJ corrected this belief, and the record and the ALJ's opinion clearly show that the ALJ considered evidence up to the correct date of last insured—June 30, 2012. Therefore, this Objection similarly is without merit.

### D. The Magistrate Judge Properly Concluded that Remand was Not Required to Consider Evidence Related to Plaintiff's Car Accident

Finally, in a two-sentence Objection, Plaintiff objects to Magistrate Judge Wells' decision that new evidence relating to a car accident that Plaintiff was involved in just before the

administrative hearing was not material to this case, and thus remand was not needed to evaluate this evidence. (Doc. No. 16 at 10.) Plaintiff believes that this new evidence is related to Plaintiff's SSI claim that she attempted to file. This Court, however, is reviewing the decision of the ALJ regarding the denial of DIB, not SSI. Thus, this Objection is also without merit.

## V. CONCLUSION

Plaintiff's Objections to the Report and Recommendation filed by Magistrate Judge Wells will be denied. The Report and Recommendation is approved and adopted. Judgment will be entered in favor of the Commissioner.

An appropriate Order follows.